**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRANK LACEY, | ) | CASE NO: 1:18CV2006 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Lt. JERMIAH LINDON, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | **)** | |
| | ) | |

This matter has been referred to the undersigned for general pretrial supervision, pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Doc. No. 13.) Currently pending is Defendant Jermiah Lindon's Unopposed Motion for Summary Judgment. (Doc. No. 51.) For the reasons set forth below, the Court recommends that the Motion for Summary Judgment be GRANTED.

**I. Factual Background**

Plaintiff Frank Lacey ("Plaintiff" or "Lacey") has been an inmate in the custody of Ohio Department of Rehabilitation and Correction ("ORDC") since May of 1980, and is currently housed at the Grafton Correctional Institution ("GCI"). Defendant Jermiah Lindon[1] ("Defendant") is a

---

[1] The docket lists Defendant's name as "Jermiah Lindon." Defendant's Motion for Summary Judgment and the attached affidavit alternately spell Defendant's name as "Jeremiah Lindon," "Jermiah Lindon," and "Jeremiah Linden." (Doc. No. 51 at 1, 2; Doc. No. 51-1 at 1.) He will be referred to as "Defendant" herein.

Correctional Captain at GCI. (Doc. No. 51-1 at 1.)

In his initial institutional grievance,[2] Plaintiff claimed that "Lt. Linden fired me from my Apprentice-Reclaimer job without any justification," without having done a work evaluation or filing a conduct report against him. (Doc. No. 1-6 at Page ID # 82; Doc. No. 51-3 at PageID # 469.) He asserts that because Defendant is not trained as a Reclaimer he has no authority to supervise GCI's Apprenticeship Reclaimer Program. (*Id.*) Plaintiff provides a list of his suspected reasons that Defendant dismissed him from his work assignment: (a) going to "early chow" in the mornings; (b) associating with other inmates deemed "trouble-makers;" and (c) refusing to process five garbage bags because he felt over-worked. (Doc. No. 1-6 at Page ID # 83-5; Doc. No. 51-3 at Page ID # 471-3.) However, Plaintiff asserts that the real reason was based on racial discrimination, because he sent internal mail, known as "kites," and made verbal complaints to superior staff members, and "refused to be bossed" by other, white, inmates.[3] (Doc. No. 1-6 at Page ID # 85-8; Doc. No. 51-3 at Page ID # 473-6.)

On Friday, November 13, 2015, Plaintiff asserts that he witnessed a dispute between two other inmates, one African-American and the other white, over the work schedule. (Doc. No. 1-6 at Page ID # 86; Doc. No. 51-3 at Page ID # 474.) He asserts that he "said a few words" to the inmates, but "did not get involved in their dispute" himself. (*Id*.) He asserts that the African-

---

[2] This document, entitled "Informal Complaint Resolution," was entered into the record by both the Plaintiff and the Defendant. It is attached to the complaint (Doc. No. 1-6) and the Motion for Summary Judgment (Doc. No. 51-3).

[3] In his letter to the Director of the EEOC, attached to his Complain, Plaintiff identifies only verbal and written complaints and the refusal to be bossed by other inmates as the "real and true reason" that Defendant fired him, which he argues constitute retaliation and wrongful discharge. (Doc. No. 1-5 at 5.)

2

American inmate involved in this dispute was also fired, but the white inmate was not. (Doc. No. 1-6 at Page ID # 87-8; Doc. No. 51-3 at Page ID # 474-5.)

On Monday, November 16, 2015, a scheduled day off from work duty, Plaintiff saw Defendant at the prison gym, and Defendant informed him that he was being suspended from his current work assignment. (Doc. No. 51-3 at Page ID # 474.)

On Wednesday, November 25, 2015, Defendant informed Plaintiff that he had been fired from the work program. (*Id*. at Page ID # 475, Doc. No. 1-5 at Page ID # 51.)

On January 5, 2016, Defendant completed a work report that set forth reasons for Plaintiff's firing from the work program. (Doc. No. 1-5 at Page ID # 51.) Plaintiff alleges that because Defendant did not actively supervise him[4] in the program, is not a Certified Reclaimer, and completed the form 42 days after he was fired, the work report is void. (*Id*. at Page ID # 52, 67.)

Plaintiff also asserts racial discrimination on the basis that white inmates in the program were given preferential treatment in the form of supervisory positions that were supposed to rotate among the inmates, but were permanently assigned to white inmates by Defendant. (Doc. No. 51-3 at Page ID # 473.) He also asserts that after he and another African-American inmate were fired, they were replaced by white inmates. (Doc. No. 1-5 at Page ID # 53.)

## II. Procedural Background

On August 31, 2018, Plaintiff, proceeding *pro se,* initiated this civil rights action against the ORDC and eleven[5] other Defendants, including Lieutenant Jermiah Linden. (Doc. No. 1.) The

---

[4] Plaintiff asserts the program is actually run by two inmates selected by Defendant. Doc. No. 1-5 at Page ID # 51.)

[5] These Defendants include: DRC Director Terry Mohr; DRC Assistant Chief Inspector M.D. Brown; the Ohio Department of Job and Family Services; Ohio

Complaint alleged violations of 42 U.S.C. § 1983.

On January 16, 2019, the Court issued an Opinion and Order, evaluating all the claims contained within Plaintiff's Complaint. (Doc. No. 11.) After a thorough evaluation of Plaintiff's Complaint, the Court determined Plaintiff's "action shall proceed solely against Defendant Linden on claims under 42 U.S.C. §1983." (Doc. No. 11 at 5.) The remaining claims and the eleven other Defendants were dismissed[6] from the action. (*Id.* at 4.)

On January 2, 2020, after issues with service delayed this proceeding, the State of Ohio entered a Notice of Limited Appearance on behalf of Defendant. (Doc. No. 26.)

On June 16, 2021, Defendant filed his Motion for Summary Judgment. (Doc. No. 51.) The Plaintiff has not filed a response.

### III. Standard of Review

Summary judgment is governed by Federal Rule of Civil Procedure 56, which provides:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The purpose of summary judgment is to determine if there is a need for a trial due to genuine factual issues that require resolution. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

Multi-Craft; LeShaun Eppinger; GCI Mental Health Administrator Jerry Spatny; GCI Institutional Inspector Tina Grudzen; Major D. Brown; Lieutenant Jermiah Linden; Deputy Warden K. Foley; and the U.S. Department of Labor. (Doc. No. 1.)

[6] Plaintiff appealed this decision to the Sixth Circuit Court of Appeals. (Doc. No. 15.) The Sixth Circuit dismissed this appeal for want of prosecution on June 24, 2019. (Doc. No. 20.)

242, 250 (1986). If, based on all the available proof, a reasonable jury could only find for one party at trial, then a trial is unnecessary and the Court may enter a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). *See also Barrett v. Lucent Technologies,* 36 F. App'x 835, 840 (6th Cir. 2002) ("Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.").

The moving party has the initial burden of demonstrating there is no genuine issue of material fact. The moving party may meet this burden by establishing the non-moving party lacks evidence to support an essential element of their case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Conversely, when the moving party carries the burden of proof for a claim, they may establish no genuine issue of material fact by setting forth evidence which would result in a directed verdict at trial. *See Calderone v. U.S.,* 799 F.2d 254, 259 (6th Cir. 1986). *See also Kassouf v. U.S. Liability Co.,* No. 1:14CV2656, 2015 WL 5542530 at *3 (N.D. Ohio Sept. 18, 2015).

Once the moving party meets this burden, the non-moving party must then present evidence which establishes genuine factual issues which require a trial. *Celotex Corp.,* 477 U.S. at 325. The non-moving party may not rest "upon the mere allegations of their pleadings nor upon general allegations that issues of fact exist." *Shell v. Lautenschlager,* No. 1:15CV1757, 2017 WL 4919206 at *1 (N.D. Ohio Oct. 31, 2017). The non-moving party must support their position with "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). *See also Celotex Corp.*, 477 U.S. at 324. The non-moving party must "present more than a scintilla of evidence" to support their position. *See Garza v. Norfolk S. Ry. Co.,* 536 F. App'x 517, 519 (6th Cir. 2013).

5

When reviewing the evidence, the court must view all the evidence and inferences in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). If after analyzing the body of evidence presented by both parties, the Court finds no reasonable jury could find in favor of the non-moving party, summary judgment must be entered. *Kassouf,* 2015 WL 5542530 at *3.

### IV. Law and Analysis

In his Complaint, Plaintiff explained his allegations against Defendant as follows:

> GCI Leiutenant Jeremaih Linden, acted under color of law when he sought to cover-up breach of contract; wrongful discharge; retaliation; whistleblowing (R.C. 4113.52); false work evaluation; racial discrimination; failure to promote; hostile work environment; intentional infliction of emotional distress; breach of oral contract. R.C. 4112.01, 4112.02, 4112.99; A.C. 5120-3-06; DRC 32-EEO-01. Sued in his personal capacity.

(Doc. No. 1 at 8.)

Defendant asserts that there is no genuine issue of material fact in dispute that would support a Retaliation Claim. (Doc. No. 51 at 5.) He notes that this Court previously held that Plaintiff "failed to state a plausible claim under Title VII, 1981, or 1983 based on allegations of unlawful termination from a prison job." (Doc. No. 11 at 5.) Therefore, he deduces that the claim permitted to proceed against Defendant to be a claim of retaliation. (Doc. No. 51 at 5.) He asserts that Plaintiff has failed to offer proof that he engaged in any protected conduct that would have resulted in retaliation, failed to offer proof of that Defendant made a threat or engaged in other retaliatory behavior, and failed to offer proof of any causal connection between his protected action and the alleged retaliation. (*Id.* at 7-9.)

Plaintiff did not respond to Defendant's Motion for Summary Judgment.[7]

---

[7] A timely reply in opposition to this motion would have been filed no later than July 16, 2021, as explained in this Court's June 25, 2021 Order, a copy of which

This Court's earlier Order of Dismissal of charges against all the other original defendants in this case explained:

> [First,] the Plaintiff has failed to state a plausible claim against any Defendant under Title VII, § 1981, or § 1983 based on allegations of unlawful termination from a prison job.
>
> Second, the Plaintiff has not alleged facts sufficient to impose liability on any Defendant other than Linden based on Linden's alleged unconstitutional conduct. It is well established that § 1983 liability cannot be imposed on a supervisory official for alleged unconstitutional conduct of a subordinate solely on the basis of vicarious liability or *respondeat superior*, or because the official failed to remedy a subordinate's unconstitutional conduct or denied an administrative grievance. . . . This action shall proceed solely against Defendant Linden on claims under 42 U.S.C. § 1983.

(Doc. No. 11 at 5.)

As noted above, in his Complaint, Plaintiff asserts numerous violations of his constitutional rights pursuant to 42 U.S.C. § 1983. This Court's prior Order held that:

> "[A] prison official may not retaliate against inmates <u>for engaging in protected conduct . . . or treat them differently based on their membership in a protected class</u>.' *White v. Trapp*, 93 F. App'x 23, 28 (6th Cir. 2004). Liberally construed, the Plaintiff's allegations support facially valid claims that Linden violated the Plaintiff's constitutional rights <u>in those regards</u>. Accordingly, this action may proceed against Linden under 42 U.S.C. § 1983."

(*Id.* at 4) (emphasis added). Therefore, this Report is limited to consideration of the claims alleging that Defendant violated Plaintiff's constitutional rights by retaliating against him for engaging in protected conduct or because of his membership in a protected class, as these are the only claims which remain in this case.

To maintain a claim under Section 1983, a plaintiff must establish that he was deprived of

---

was sent to Defendant. Therefore, as of August 5, 2021, this reply is 20 days past its filing deadline.

7

a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Baker*, 443 U.S. at 140.

    **A.**    **Responsibility for Plaintiff's Discharge from the Work Program**

Defendant in this case asserts that he is not the individual who discharged Plaintiff from the work program. In his affidavit, he asserts that he was not working on November 25, 2015, the date Plaintiff claims to have been informed that his dismissal from the Reclaimer program was permanent. (Doc. No. 51-1 at ¶ 6.) Defendant's affidavit avers that he did not request Plaintiff's removal from his work assignment. (*Id*.) He explains that Plaintiff was removed from his work assignment by a captain at GCI due to poor performance, and he later "agreed with and affirmed" that decision "based on work performance alone." (*Id.* at ¶ 6-7.) Plaintiff did not respond to Defendant's assertion of fact. Where "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Therefore, it is undisputed that the Defendant did not request Plaintiff's removal from his prison job, and this discharge is the only retaliatory action alleged in this case, this Court recommends that the Defendant's Motion for Summary Judgment be granted because

there is no evidence that Defendant engaged in or affirmed retaliatory behavior.[8] However, the bar for establishing § 1983 liability is not high. As the Sixth Circuit explained, "at a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999), citing *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir.1982). In this case, it is undisputed that Defendant "agreed with and affirmed" Plaintiff's discharge from the work program after it occurred, and therefore, this Court will address the other elements of this claim below.

### B. Retaliation for Protected Conduct

It is well-settled that "a prison official may not retaliate against inmates for engaging in protected conduct." *White v. Trapp*, 93 F. App'x 23, 28 (6th Cir. 2004). A First Amendment retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The First Amendment provides more limited protection for speech by incarcerated individuals than it does for speech by non-incarcerated individuals. *Thornburg v. Abbot*, 490 U.S.

---

[8] To the extent that Plaintiff's claims are based on Defendant's supervision of the work program during his time as an apprentice-reclaimer, these claims are so undeveloped that they are waived. *See, e.g., Courser v. Allard*, 969 F.3d 604, 616 (6th Cir. 2020) ("We have cautioned that '[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited],' and that '[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'") (citing *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ).

9

401, 414 16 (1989); *Turner v. Safley*, 482 U.S. 78, 92 (1987). The filing of a non-frivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). This is because "[a] prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Smith v. Campbell*, 250 F.3d 1032, 1036 37 (6th Cir. 2001). However, the Sixth Circuit made clear that an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich,* 48 F. App'x 520, 525 (6th Cir. 2002).

Verbal complaints are also protected conduct. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298-99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984-85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by threatening to file a grievance).

Here, Plaintiff asserts that Defendant committed retaliation by firing him from the prison work program in part because "I sent Kites and made verbal complaints to Superior Staff members." (Doc. No. 1-6 at 15.) In his complaint to the EEOC, he elaborated that he "complained to superior staff members that Lt. Linden was illegally permitting [other inmates] to have the power of

10

supervision over other inmate apprentice-reclaimers." (Doc. No. 1-5 at Page ID # 46.) Defendant asserts that Plaintiff has not provided the Court with any evidence supporting the assertion that he verbally complained or filed any written complaints or grievances prior to his discharge. (Doc. No. 51 at 7.) This is incorrect.

Plaintiff described and attached copies of relevant kites sent to the Defendant, the Deputy Warden, the Warden, and another prison officer as attachments 8 through 11 to the letter he sent to the EEOC, and included as an attachment to his Complaint. (Doc. No. 1-6 at Page ID # 110-16.) Only one of these kites is clearly dated prior to Plaintiff's dismissal on November 25, 2015. That is a note addressed to the Deputy Warden, which is dated July 30, 2015. (Doc. No. 1-6 at Page ID # 111.) It reads as follows:

> This kite is a reminder that I spoke with you today, concerning [illegible] the matter of prisoners having supervisory [sic] over other prisoners. And asking you to send some Staff Member to discuss the matter with the reclaimers.

(*Id*.) A second, much longer, note is dated November 20, 2015, but is stamped as being "received November 25, 2015," the same day Plaintiff was dismissed from the work program. (*Id.* at Page ID # 112-14.) It details complaints about the work program which are similar to the allegations in Plaintiff's Complaint. In this note, Plaintiff seeks reinstatement, noting that he was suspended from his job on November 16, 2015, and that he "was expecting to get fired" and believed two other inmates in the work program were "conspiring to get [him] fired." (*Id.* at Page ID # 113.) Thus, the contents of the note as well as the date suggest it was composed prior to Plaintiff's dismissal from the work program.

These notes constitute more than a scintilla of evidence that Plaintiff engaged in protected conduct by complaining about conditions in the work program prior to his dismissal. However, he

11

must also establish that the alleged retaliatory behavior is an adverse action that would deter a person of ordinary firmness from engaging in the protected conduct. *Thaddeus X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999). "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002). As the Defendant noted, "'prisoners are expected to endure more than the average citizen,' and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter ..." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (quoting *Siggers-El v. Barlow,* 412 F.3d 693, 701 (6th Cir. 2005)). However, the Sixth Circuit has explained that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." *Hill v. Lapin*, 630 F.3d 468, 474 (6th Cir. 2010).

Here, Plaintiff claims the adverse action was the loss of his work assignment. Numerous courts in this Circuit have found that an inmate's work assignment is a condition of confinement, and not analogous to employment. Therefore, changes in an inmate's work assignment cannot be viewed as an adverse action upon which the inmate can base a First Amendment retaliation claim. *See, e.g.*, *Nettles v. Smoker*, No. 1:13CV1353, 2015 WL 1565429, at *4 (W.D. Mich. Apr. 8, 2015); *Payton v. Cox*, No. 2:20-CV-4838, 2020 WL 7046963, at *6 (S.D. Ohio Dec. 1, 2020); *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001) (dismissal of prisoner from his job was not a constitutional violation).[9] Further, after losing his prison job, Plaintiff was not deterred from continuing to pursue

---

[9] The Sixth Circuit has held that loss of income from a high-paying prison job can constitute an adverse action for retaliation purposes. *Siggers-El v. Barlow*, 412 F.3d 693, 701 02 (6th Cir. 2005) (loss of income from a high-paying prison job can constitute an adverse action for retaliation purposes); *Shehee v. Luttrell*, 199 F.3d 295, 300 01 (6th Cir. 1999) (dismissal from a commissary prison job, "a coveted assignment based on its higher pay and favorable working conditions," could constitute an adverse action). However, Plaintiff does not make that

his grievance, as he sought redress through both the prison grievance system and this court, and alleges he suffered no further adverse actions as a consequence. Therefore, Plaintiff has failed to establish the critical element of adverse action in his retaliation claim, and it should be dismissed.

Assuming, *arguendo,* that the loss of his prison job did constitute an adverse action, Plaintiff also fails to establish the third critical element of a retaliation claim: a causal relationship between the alleged adverse action and the protected behavior. He argues that the temporal proximity between these complaints and his dismissal is sufficient to establish a causal connection between his complaints and his dismissal. (Doc. No. 1-5 at PageID # 47.)

The Sixth Circuit has held that temporal proximity between the plaintiff's protected conduct and alleged retaliatory acts may create an inference of retaliatory motive. *Maben v. Thelen*, 887 F.3d 252, 268 (6th Cir. 2018) (citing *King*, 680 F.3d at 695-96). However, "conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden,* 89 F. App'x 579, 579-80 (6th Cir. 2004). Plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

Here, Defendant has offered a written performance evaluation and an affidavit supporting his assertion that Plaintiff was fired for sub-standard work performance, including a refusal to complete work supervised by other inmates. (Doc. No. 51 at 10; Doc. Nos. 51-1, 51-2.) Because

---

argument here, nor has he offered any assertions, let alone evidence, that his job was high-paying, or that he did not have the opportunity to replace any lost income. "There is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.' " *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir.1992) (citations omitted).

13

Plaintiff failed to properly address Defendant's assertion of fact as required by Rule 56(c), this Court may consider these fact undisputed for purposes of the motion for Summary Judgment under Fed. R. Civ. P. 56(e)(2). Further, Plaintiff has failed to offer anything but his unsupported allegations to prove the Defendant had a retaliatory motive. Therefore, this Court recommends that Defendant's Motion for Summary Judgement regarding Plaintiff's allegations of retaliation should be granted.

### C.     Equal Protection

Plaintiff also alleges that Defendant discriminated against him based on race. (Doc. No. 1 at 8.) He bases this allegation on the assertion that both he and another African-American inmate were discharged from the prison work program, and were both replaced by white inmates. (*Id*., Doc. No. 1-5 at Page ID # 53.)

The Equal Protection Clause of the Fourteenth Amendment "provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws.' " *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (quoting U.S. Const., amend. XIV, § 1). The Clause "embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). The Sixth Circuit has explained that, "to state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). The threshold element of an equal protection claim is disparate treatment. *Id.* (citing *Scarbrough*, 470 F.3d at 260).

Plaintiff's claim cannot survive summary judgment because he fails to provide any evidence that African-American reclaimer-apprentices were treated differently than white reclaimer-

14

apprentices, and fails to allege or provide evidence to demonstrate that the prisoners whom he alleges received disparate treatment based on race were similarly situated. *See Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) ("First, '[t]o satisfy [the Equal Protection Clause's] threshold inquiry, [plaintiffs] must allege that [they] and other individuals who were treated differently were similarly situated in all material respects.' ") (quoting *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009)); *see also Hubbard v. Theut*, No. 2:19-cv-52, 2019 WL 1198536, at *5 (W.D. Mich. Mar. 14, 2019) (dismissing prisoner's purported equal protection claim because his "assertion of disparate treatment [was] wholly conclusory" rather than being supported by facts). Therefore, this Court recommends that Defendant's Motion for Summary Judgement regarding Plaintiff's allegations of discrimination should be granted.

## V. Conclusion

Accordingly and for all the reasons set forth above, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

Date: August 5, 2021   *s/Jonathan D. Greenberg*
Jonathan D. Greenberg
U.S. Magistrate Judge